**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Nicholas C.,

      Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

      Defendant.

Case No. 25-.cv-2287 (LMP/DTS)

**REPORT & RECOMMENDATION**

---

## INTRODUCTION

Claimant Nicholas C. seeks judicial review of the denial of his application for Social Security Disability Insurance and Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. His claim was denied initially and on reconsideration. On appeal, Claimant argues (1) the Administrative Law Judge (ALJ) failed to address the impacts of a structured setting when concluding Claimant did not have an impairment or combination of impairments equaling the severity of a listed impairment; and (2) the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence. For the reasons explained below, the Court recommends the ALJ's decision be affirmed.

## BACKGROUND

### I.    Procedural History

Claimant applied for disability and SSI benefits in December 2022, alleging disability beginning on November 25, 2021, due to depression, bipolar disorder, obsessive-compulsive disorder, anxiety, substance addiction disorders, attention deficit hyperactivity disorder, history of hypothyroidism, and left foot fracture. Administrative

Record 102–103, Dkt. No. 7 (A.R.). After his claims were denied initially and on reconsideration, Claimant requested a hearing before the ALJ. After the hearing, the ALJ issued a decision finding Claimant not disabled. *Id.* at 17–31. The Appeals Council denied Claimant's request for review. *Id.* at 89–92. He then sought review in federal court.

The ALJ's decision followed the five-step sequential evaluation process outlined in 20 C.F.R. § 416.920 to determine whether Claimant was entitled to disability benefits. At step 1, the ALJ found Claimant had not engaged in substantial gainful activity since his alleged onset date. A.R. at 19–20. At step 2, the ALJ found Claimant had the following medically determinable severe impairments: bipolar disorder; major depressive disorder; generalized anxiety disorder; and attention deficit hyperactivity disorder. *Id.* at 20. At step 3, the ALJ determined Claimant had no impairment or combination of impairments that met or were medically equivalent to the severity of a listed impairment. *Id.* Before proceeding to step four, the ALJ found Claimant had the residual functioning capacity (RFC) to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: with regard to concentration, persistence and pace, no work in excess of simple tasks; occasional changes in work setting; brief and superficial interaction with others meaning the 5th digit of the DOT code is either a "6," "7," or "8"; no complex decision-making; and no rapid, assembly-line type work, meaning there would be daily quotas but not hourly quotas.

A.R. at 23. At step four, the ALJ determined the Claimant had no past relevant work. *Id.* at 29. At step 5, the ALJ found that Claimant could perform work in the national economy and identified three suitable occupations representing more than 200,000 positions. *Id.* at 30. The ALJ accordingly denied Claimant's application. *Id.* The Appeals Council denied Claimant's request for review, making the ALJ's decision final. Claimant now seeks

judicial review under 42 U.S.C. § 405(g), requesting reversal for an award of benefits or remand. Pl.'s Br. 1, Dkt. No. 9.

**ANALYSIS**

**I.      Standard of Review**

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. § 405(g). A reviewing court can affirm, modify, or reverse the Commissioner's decision with or without remand. *Id.* The reviewing court's task is limited to determining "whether the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citation modified). An ALJ's error of law "may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citation modified); *see also Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) ("The failure to comply with SSA regulations is more than a drafting issue, it is legal error."). In the absence of legal error, a court must affirm an ALJ's decision if it supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018). Substantial evidence is what "a reasonable mind would find . . . adequate to support the conclusion." *Chismarich*, 888 F.3d at 979 (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)).

**II.     Structured Setting**

**A.      Listed Impairments**

Claimant argues that the ALJ failed to consider the impact of a structured setting in his step 3 analysis. Pl.'s Br. 16–20. To parse Claimant's argument, some background on listed impairments is necessary. "If the claimant wins at the third step (a listed

impairment), she must be held disabled, and the case is over." *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003). To satisfy the requirements of Listing 12.04 (depressive, bipolar, and related disorders) or Listing 12.06 (anxiety and obsessive-compulsive disorder), a claimant's mental disorder must satisfy either (1) paragraph A and paragraph B of the respective listing; or (2) paragraph A and paragraph C of the respective listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2). Paragraph C is satisfied "when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfies both C1 and C2." *Id.* § 12.00(G)(2)(a). "The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder." *Id.* § 12.00(G)(2)(b). "The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment." *Id.* § 12.00(G)(2)(c). Claimant argues that because "the ALJ failed to sufficiently develop the record or to point to the evidence relied upon in support of his decision that [he] did not met Paragraph C criteria," remand is required. Pl.'s Br. 18–20. The Court construes this as a logical bridge argument.

The ALJ's opinion must allow a court to "trace the path of the ALJ's reasoning" so as to assess whether substantial evidence supports the ALJ's decision. *Jacobs v. Astrue*, No. 08-cv-431, 2009 WL 943859, at *3 (D. Minn. Apr. 6, 2009) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). Thus, an ALJ must "construct a 'logical bridge' between the evidence and his conclusions." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d

863, 872 (7th Cir. 2000)). The requirement to build a logical bridge in not an arduous standard; it "is a minimal articulation standard, meaning that the ALJ is not required to address every piece of evidence in writing, but must explain his rejection of uncontradicted evidence that would support the claim for benefits, in order to overcome the inference that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant." *Id.*

The ALJ satisfied that minimal articulation standard here. At the hearing, Dr. Ann Monis explained why, in her opinion, the Claimant did not satisfy the paragraph C criteria:

> Q. In your opinion, Doctor, does the claimant satisfy the Part C criteria?
>
> A. No, Judge, no C criteria.
>
> Q. And why is that?
>
> A. Well, a couple of things. We don't have severity levels in the records. They're mild to moderate, mostly moderate, that are ongoing or severe enough over a two year period. We also aren't seeing a controlled environment that is being applied . . . as a result. So, we simply don't have the C criteria here.

A.R. at 58. The ALJ found Dr. Monis's opinion persuasive. A.R. at 21 ("Dr. Monis is an expert with programmatic knowledge. She had an opportunity to listen to the claimant's testimony and reviewed her comprehensive record available at the hearing level. She based her testimony and opinion on review of the record and her opinions are consistent with and supported by this record. Accordingly, I find Dr. Monis' opinions persuasive as to the 'paragraph B' and 'paragraph C' criteria[.]"). Because the ALJ found Dr. Monis's opinion persuasive, and Dr. Monis testified that Claimant was not dependent on a controlled environment, it is readily apparent that the ALJ concluded Claimant did not

5

meet the paragraph C criteria because the record evidence showed he did not rely on a highly structured setting to manage his mental health disorders.

This is supported by an examination of the ALJ's decision in its entirety. *See Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009) (concluding that an ALJ's findings were "apparent from the opinion's entirety"); *Tria V. H. v. Colvin*, No. 23-cv-2979, 2025 WL 66505, at *3 (D. Minn. Jan. 10, 2025) (rejecting a similar challenge because "[e]lsewhere in the written decision the ALJ fully discussed the evidence regarding Plaintiff's ability to interact with others"). Shortly before discussing paragraph C criteria, the ALJ concluded Claimant did not satisfy paragraph B criteria because his mental impairments resulted in only mild and moderate limitations. A.R. at 21–23. For example, the ALJ found the Claimant was moderately limited in his ability to adjust or manage oneself, reasoning:

> the claimant has stable housing and good support from friends and family. (See Exhibits B1F/3, 10, 31; B4F/17; B10F/10; B11F/4; B15F/18, 28, 134). His last psychiatric hospitalization occurred in April 2022 and he has had no mental health decompensation or manic episode(s) since then. (See Exhibits B3F/5-81; B14F). Further, he has been able to engage in part-time work activities during the claim period. (See Hearing Record; Exhibits B1F/4; B18F/5, 15). He is able to care for himself and manage his own medications, transportation and finances. (See Hearing Record; Exhibits B7E; B11E). He also appears to have responded well to mental health intervention including monthly Abilify injections. (See Exhibits B15F/9, 12, 21; B18F/5, 10, 15).

A.R. at 23. By concluding that Claimant was only moderately limited in adjusting or managing himself, the ALJ clearly did not believe the Claimant depended on a highly structured setting and had only achieved marginal adjustment (i.e., minimal capacity to adapt to changes in environment or to demands not already part of daily life). Moreover, when explaining his RFC determination, the ALJ rejected Claimant's assertion as to the

6

importance of a structured environment for his mental health. *See* Infra, Part II.B. In sum, remand is not required for the ALJ to further explain why he found Claimant did not meet the paragraph C criteria.

### B.    RFC Determination

Claimant next contends that the ALJ's decision to exclude his structured support setting from the RFC determination is not supported by substantial evidence. Pl.'s Br. 22–23. Claimant argues he "was under the care of multiple providers at Guild, Inc., a comprehensive mental health case management provider with a team that included psychiatric medical management, case management, nursing care to provide a monthly injection, and employment services." Pl.'s Br. 18. The Court disagrees.

Throughout his decision, the ALJ cited evidence in the administrative record undercutting Claimant's assertion that he heavily relied on a structured environment. For example, the ALJ reasoned: "[Claimant] is able to care for himself and manage his own medications, transportation and finances," A.R. at 23 (citing A.R. at 354–56, 380–83); "[C]laimant was noted to be minimally engaged with the ACT team through the GUILD and not particularly interested in targeted case management services," A.R. at 25 (citing A.R. at 450–51); *see also* A.R. at 783–84, 835–36, 867, 977, 1050–51 (discussing Claimant being minimally engaged with his mental health support network); and in late 2023 Claimant discontinued Guild's services with a plan to receive monthly injections through a different provider, A.R. at 27 (citing A.R. at 1456–1460). That Claimant only minimally engaged with Guild and had recently decided he no longer needed the organization's services amply supports the ALJ's decision to not incorporate the support

of a structured environment into the RFC determination. That is more than enough to satisfy the deferential substantial evidence standard.

## III.   Anticipated Absences

Finally, Claimant argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to reflect anticipated absences from the workplace. Pl.'s Br. 21–22. According to Claimant, he has frequent appointments with medical providers and mental health support staff, and these "appointments alone would require more absences from the workplace than the vocational expert testified would be permissible by an employer." *Id.* at 21. Claimant also contends that the ALJ failed to consider his failure to appear for scheduled medical appointments. *Id.* at 21–22. Claimant argues that there is a "high likelihood that these absence patterns would follow [him] into the workplace." *Id.* at 2. The Court is not persuaded.

As another court in this District has explained:

> Undoubtedly, the record now before the Court does demonstrate that [Claimant] attended frequent medical appointment; nevertheless, simply because a [claimant] requires regular healthcare appointments does not necessarily mean [he] cannot work on the days [he] has appointment, such as by arranging appointments around the work schedule or during breaks, nor even that the [claimant] would need to miss an entire work day for an appointment. Instead, if [Claimant] contends [his] medical appointments would necessarily conflict with a work schedule, it is [his] burden to demonstrate that.

*Nicole L. v. Kijakazi*, No. 20-cv-2326, 2022 WL 479360, at *6 (D. Minn. Jan. 31, 2022), *R. & R. adopted by* 2022 WL 484963 (D. Minn. Feb. 16, 2022) (citation modified); *see also Jason P. P. v. Kijakazi*, No. 20-cv-688, 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021) (same). As in those cases, Claimant in this case has not met his burden to

demonstrate that his medical appointments would necessarily conflict with his work schedule. First, most of the appointments Claimant points to involved mental health support services through Guild, services which Claimant has voluntarily discontinued. A.R. at 1456–1460. Second, Claimant often did not show up for his Guild appointments, seemingly by choice. The ALJ was not required to incorporate anticipated absences in the RFC to account for appointments Claimant no longer schedules and that he often declined to attend even when he was scheduling them. For the smattering of remaining appointments substantiated by the record, such as monthly injections, A.R. at 1459, nothing suggests these appointments are particularly frequent or disruptive. Unlike a claimant who requires lengthy dialysis sessions every week, there is no readily apparent reason why Claimant "cannot work on the days [he] has appointment, such as by arranging appointments around the work schedule or during breaks, nor even that [Claimant] would need to miss an entire work day for an appointment." *Nicole L.*, 2022 WL 479360, at *6 (quoting *Morin v. Colvin*, No. 4:14-cv-000769, 2015 WL 4928461, at *9 (W.D. Mo. Aug. 18, 2015)).

Claimant's failure-to-attend-appointments argument fares no better. First, Claimant fails to articulate how Claimant's failure to attend his medical appointments is linked to his impairments. Pl.'s Br. at 21–22. To the contrary, the record indicates Claimant's decision to minimally engage with his Guild services team was voluntary, A.R. at 783–84, 835–36, 867, 977, 1050–51, and he eventually decided that he no longer needed their services, *id.* at 1456–1460. That Claimant was "minimally engaged" with his mental health support team, A.R. at 25, does not support the inference that he would regularly need to be absent from work, let alone require the ALJ to reach that conclusion.

Second, the link between Claimant's failure to attend appointments and absenteeism is speculative. The ALJ could reasonably reject Claimant's unsubstantiated assertion that "these absence patterns would follow [him] into the workplace." Pl.'s Br. 22. To the contrary, the administrative record does not clearly reflect a history of absenteeism in the workplace. *Cf.* A.R. at 25–27 (the ALJ summarizing Claimant's recent job history). Simply put, the ALJ's decision to not include anticipated absences in his RFC determination is supported by substantial evidence.

## RECOMMENDATION

Based on the record, memoranda, and proceedings herein, and for the reasons stated above, the Court RECOMMENDS THAT:

1.      Plaintiff's request to reverse or remand the Commissioner's decision (Dkt. No. 9) be DENIED.

2.      Defendant's request to affirm the Commissioner's decision (Dkt. No. 21) be GRANTED.


Dated: May 14, 2026                     s/ David T. Schultz_____
                                        DAVID T. SCHULTZ
                                        United States Magistrate Judge


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those

objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).